UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Revision Military Ltd.,

    Plaintiff,

    v.                                              Civil Action No. 2:17–cv–128

Gideon Services, Inc.,

    Defendant.

**REPORT AND RECOMMENDATION**
(Doc.11)

    This is a breach of contract action brought by Plaintiff Revision Military Ltd. (Revision) against Gideon Services, Inc., (Gideon) for failure to pay $194,512.60 for military batteries and battery chargers supplied by Revision to Gideon.  (Doc. 1.) Despite proper service, Gideon failed to plead or otherwise answer the allegations of the Complaint and the Clerk entered a default under Fed. R. Civ. P. 55(a).  (Doc. 10.) Presently before the Court is Revision's Motion for Default Judgment by the Court under Fed. R. Civ. P. 55(b)(2).  (Doc. 11.)  Revision seeks a judgment for damages in the amount alleged in the Complaint, together with its costs and interest.  (*Id*.)

**Preliminary Statement**

    On July 12, 2017, Revision filed the Complaint initiating this action in which it is alleged that Defendant has breached a contract by failing to pay for military batteries and battery chargers supplied to it by Plaintiff. (Doc. 1.)  On August 1, 2017, an executed Summons was filed as evidence of service of process on the

registered agent of Gideon. (Doc. 3.) No Answer or other responsive pleading has been filed on behalf of Gideon. A Clerk's Entry of Default was filed on October 4, 2017. (Doc. 10.) Plaintiff filed the pending Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) on October 4, 2017. (Doc. 11.)

Notwithstanding the fact that Plaintiff has consented to jurisdiction by the Magistrate Judge over this case pursuant to 28 U.S.C. § 636(c), (Doc. 2), the decision on Plaintiff's Motion for Default must be in the form of a Report and Recommendation because Gideon, the defaulting party, has not consented to jurisdiction by the Magistrate Judge. *See, e.g.*, *Jack Tyler Eng'g Co. v. Colfax Corp.*, 2011 WL 384614 at *4 (W.D. Tenn. Feb. 3, 2011) (magistrate judge lacked statutory authority to enter default judgment absent consent of defaulting party); *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F.Supp.2d 704, 715 (S.D. Ohio 2002) (default judgment motion is dispositive and magistrate judge may only issue recommended dispositions with respect to such a motion); *see generally N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 25 (2d Cir. 1993) (absent consent, magistrate judge not authorized to issue final order).

## Discussion

### I.   Factual Background

It is well settled that a defendant who fails to answer or otherwise oppose a complaint is "deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability." *Finkel v. Romanowicz*, 577 F.3d 79, 81 n.1 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d

Cir. 1992)). Accordingly, the following facts, which are drawn from Revision's Complaint, and the documentary evidence attached thereto, *see* Fed. R. Civ. P. 10(c), are established for the purpose of determining Gideon's liability.

Revision is a Delaware corporation with its principal place of business in Essex, Vermont. (Doc. 1 at 1, ¶ 2.) It is in the business of providing protective equipment to the United States military and for military situations worldwide. (*Id.*) Gideon is an Alabama corporation with its principal place of business in Huntsville, Alabama. (*Id.* ¶ 3.) Gideon is in the business of providing technical supplies and services to government agencies. (*Id.*)

By email communications dated July 11, 2016, and again on July 20, 2016, Gideon requested that Revision supply proposed unit pricing on 294 batteries and 147 charging devices. (*Id.* at 2, ¶¶ 6–8.) Revision provided the requested pricing and on August 8, 2016, Gideon ordered the batteries and chargers from Revision. (*Id.* ¶¶ 8–9.) The batteries and chargers were shipped and delivered in two shipments arriving on December 12, 2016, and January 4, 2017. (*Id.* ¶ 10.) Gideon failed to pay for the products within 30 days as specified in the purchase order. (*Id.* ¶¶ 10–11.) On February 16, 2017, Revision's Chief Financial Officer, Michael Garvey, and Gideon's Chief Executive Officer, Anna Thornley, spoke on the phone. (*Id.* ¶ 12.) Thornley agreed that Gideon would pay the sum of $25,000 per week until the debt was satisfied. (*Id.* ¶¶ 12, 13.) Thornley later sent Garvey an email confirming that understanding. (*Id.* ¶ 13; Doc. 1-3.) Gideon has failed to pay any of the $194,512.60 debt. (*Id.* at 3, ¶¶ 15, 16.)

## II. Subject-Matter and Personal Jurisdiction

As with any motion, a court must first assure itself that it has subject-matter jurisdiction over the controversy. Here, it is clear that the Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) by reason of the diversity of citizenship between the parties and an amount in controversy exceeding $75,000.

"[B]efore a court grants a motion for default judgment, it *may* first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (emphasis added). The Second Circuit has left open, however, the issue of "whether a district court *must* investigate its personal jurisdiction over [a] defendant before entering a default judgment." *Id.* at 213 n.7; *but see Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999) (vacating default judgment and instructing district court to determine whether the plaintiffs could "prove the jurisdictional facts by a preponderance of the evidence").

It is also clear that the Court has specific personal jurisdiction over Gideon by virtue of Gideon doing business in Vermont. Personal jurisdiction over a defendant may be general or specific. *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

> Specific personal jurisdiction exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.

4

*Id.* at 673–74 (alterations and internal quotation marks omitted). Here the Complaint's allegations, now deemed to be true, reveal that Gideon solicited product prices from a Vermont based supplier, negotiated with the supplier, and accepted delivery of the products from the Vermont supplier. (*See generally* Doc. 1.) Specific personal jurisdiction has been properly alleged.

### III.   Default Judgment Process

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The first step is to obtain an entry of default from the clerk under Rule 55(a). *Id.* at 504–05. That step has been accomplished here. (Doc. 10.) The second step requires the plaintiff to seek a judgment by default under Rule 55(b). *Priestley*, 647 F.3d at 505. Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear. *Id.* Although it appears that Revision's claim is for a sum certain, it has not moved for the Clerk's Entry of Judgment under Rule 55(b)(1). Rather, it seeks judgment by the Court under Rule 55(b)(2). (Doc. 11.)

The Court's next task is to determine if the Complaint alleges a valid cause of action. "Under the case law interpreting [Rule 55(b)], the default establishes [a defendant's] liability . . . as long as the complaint has stated a valid cause of action." *Kuruwa v. Meyers*, 823 F.Supp.2d 253, 256 (S.D.N.Y. 2011) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Bambu Sales. Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir.1995)).

Although the Complaint alleges a breach of contract by Gideon, it is unclear from the Complaint if the cause of action is based upon a breach of an express contract or an implied contract. No written contract is referenced in the Complaint nor is one appended to the Complaint. That of course does not end the inquiry because Vermont law recognizes liability for breach of an implied contract when no express contract exists. "The law implies a promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." *Cedric Elec., Inc. v. Shea*, 144 Vt. 85, 86, 472 A.2d 757, 757 (1984). Here, the Complaint alleges that Defendant received the batteries and chargers it ordered and has failed to pay for them as it had agreed to do. Retention of those products without paying for them would be inequitable. As such, a valid cause of action for breach of contract has been alleged.

## IV. Damages

With respect to damages, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Alcantara*, 183 F.3d at 155. This inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing [the] plaintiff's evidence supporting the damages to be determined[.]" *Id.* A court may determine the appropriate damages on the basis of affidavits and other documentary evidence, "as long as [the Court has] ensured that there [is] a basis for the damages specified in the default judgment." *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105,

111 (2d Cir. 1997) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir.1989)).

The facts in this matter are not complex; thus, further evidentiary proceedings are unnecessary. Attached to the Complaint and incorporated therein by reference are the following documents: an unsigned purchase order (Doc. 1-1); two invoices for the batteries and chargers directed to Gideon totaling $194,512.60 (Doc. 1-2); and print-outs of emails between Revision and Gideon's representatives regarding the outstanding debt. (Doc. 1-3). An Affidavit from a representative of Revision, Gregory Maguire, establishes the authenticity of the invoices. (Doc. 13.) With a proper foundation the invoices would be admissible at trial as business records under Fed. R. Evid. 803(6). There is therefore a clear evidentiary basis for the computation of damages in the amount of $194,512.60, plus costs consisting of the filing fee of $400.

In its Motion, Revision also seeks an award of interest on Gideon's debt. It is well settled under Second Circuit law that the "entitlement to an[] amount of interest in a breach of contract action is governed by the state law under which the contract is interpreted." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 875 F. Supp. 165, 174 n.10 (S.D.N.Y. 1994) (citing *Lee v. Joseph E. Seagram & Sons, Inc.*, 592 F.2d 39, 41 n.2 (2d Cir.1979)); *see also Spector v. Mermelstein*, 485 F.2d 474 (2d Cir. 1973) (same and collecting cases). Thus, the assessment of prejudgment interest requires consideration of Vermont law. *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 342 (2d Cir. 1993) ("The availability of prejudgment interest in this diversity suit is determined by state law.") In Vermont, the general rule is that

"[p]rejudgment interest is awarded as of right when damages are liquidated or reasonably certain." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 36, 181 Vt. 513, 928 A.2d 497. Because the damages here are in fact reasonably certain, it is recommended that Revision be awarded prejudgment interest pursuant to 9 V.S.A. § 41a(a). The amount of accrued interest is not addressed in the Motion or Plaintiff's proposed Default Judgment. Generally speaking, interest begins to run from the time a debt becomes payable or payment is demanded, or when suit is brought, which is a judicial demand. *Vt. Structural Steel Corp. v. Brickman*, 131 Vt. 144, 148, 300 A.2d 629, 631 (1973). In the absence of evidence of a formal contractual provision governing interest, or evidence of when a formal demand was made, prejudgment interest should begin to accrue July 12, 2017, the date of the filing of the Complaint. **Revision should submit a revised proposed Default Judgment in which the amount of prejudgment interest is determined in accordance with 9 V.S.A. § 41a(a) and set forth therein.**

## CONCLUSION

Based on the foregoing, it is recommended that, upon submission of a revised proposed Default Judgment, the Court GRANT Plaintiff's Motion for Default Judgment. (Doc. 11). Defendant is liable to Plaintiff in the amount of $194,512.60, together with costs of $400 for a total sum of $194,912.60. Pursuant to Fed. R. Civ. P. 55(b)(2), the Court should direct the Clerk to enter a default judgment in favor of Plaintiff in the amount of $194,912.60, together with prejudgment interest, which is to be determined.

Dated at Burlington, in the District of Vermont, this 30th day of October 2017.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections, which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

9